SAMUEL, Judge.
This is a suit by the State Tax Collector for the City of New Orleans and the City of 'New Orleans, as joint petitioners, for 1955 ■.movable property ad valorem taxes.
The movable property upon which the tax allegedly was due consisted of a portion of the assets of General Truck Company, a commercial partnership composed of C. P. Simpson and Frederick Liberto which had been engaged in the business of truck sales and service in New Orleans. At the time this suit was instituted neither C. P. Simpson nor his heirs, if he was deceased, were within the court’s jurisdiction. Frederick Liberto had died and his widow and heirs were made parties defendant on the basis of their acceptance of his succession.
On August 4, 1954, General Motors Corporation, Truck and Coach Division (herein referred to as GMC) and the said partners of General Truck Company entered into an agreement to purchase and sell the partnership business and assets. Insofar as physical possession is concerned, the business and assets were transferred to GMC at the close of business on August 31, 1954 and GMC, in turn, immediately transferred the same to Frierson GMC Truck Company, Inc. (now Frierson Realty Corporation and herein referred to as Frierson). Frierson then took possession of the property and began operation of the dealership. After the assets and the values thereof had been agreed upon by the parties General Truck Company sold the property to GMC; the bill of sale was executed on October 21, 1954. In connection with the sale, and pursuant to the Louisiana Bulk Sales Law, General Truck Company gave GMC its certificate of liabilities as of August 31, 1954, which certificate shows no outstanding liability for state or city property taxes. General Truck Company also executed and delivered to GMC its “indemnity agreement” to hold the buyer harmless from any claims lawfully made against the latter by reason of the purchase or against the purchased assets if made “ * * * by any person (including any governmental authority) as a creditor * * * ” of the seller under the provisions of the Louisiana Bulk Sales Law. It is clear that on August 1, 1954 neither GMC nor Frierson had any interest in the movable property in question.
*824 The 1955 taxes herein sought to he collected were assessed against Frierson and a notice of seizure was issued and directed to that corporation in 1957 on the basis of that assessment. On June 19, 1957 Frier-son brought suit (“Frierson G.M.C. Truck Company, Inc. vs George Montgomery Jr., State Tax Collector for the State of Louisiana, et als.”, No. 354-655 of the docket of the Civil District Court for the Parish of Orleans, which proceeding forms a part of the record in the instant case) for an injunction against the State Tax Collector for the City of New Orleans, the Deputy Tax Collector for the Parish of Orleans, and other governmental authorities concerned with property taxes, seeking to enjoin them from proceeding with the seizure and sale of Frierson’s property for payment of the 1955 taxes. The suit also sought to make C. P. Simpson and the widow and heirs of Frederick Liberto parties defendant alleging they were the persons who actually owed the taxes, and alternatively, in the event of a judgment holding Frierson obligated to pay the taxes, sought relief against C. P. Simpson and the Liberto widow and heirs in subrogation and warranty. A temporary restraining order was issued prohibiting the tax authorities from proceeding with the seizure and sale of Friei'son’s property. The records do not identify the particular property allegedly seized or sought to be seized. The taxing authorities were cited and served during the month of June, 1957. No further pleadings were filed and no further action was taken by any party in the suit at any time subsequent to June 21, 1957. Neither C. P. Simpson nor the Liberto widow and heirs were ever cited or served.
While the suit for injunction was pending the Louisiana State Tax Commission reviewed the matter on Frierson’s application. On October 10, 1957 the Commission ordered cancellation of the assessment in the name of Frierson and levied the assessment against Frederick Liberto and C. P. Simpson, d/b/a General Truck Company. The assessor then cancelled the assessment in the name of Frierson and made a supplemental assessment of the property in the name of Frederick Liberto and C. P. Simpson, d/b/a General Truck Company.
In connection with the cancelled and supplemental assessments the Tax Commission required a bond to protect the interests of the state and city in the outstanding taxes. Such a bond was posted by GMC wherein it and its surety, Employers Liability Assurance Company, Ltd., agreed to pay the taxes to the State of Louisiana and the City of New Orleans in the event those taxes could not be collected by the state and the city from Simpson and Liberto, as general partners of the General Truck Company, or individually, “ * * * after the exercise of due diligence in the attempt to recover from the said persons by the State of Louisiana and/or the City of New Orleans”.
The record contains an exhibit offered by the state and city, which they contend is a notice of seizure of the property of Frederick Liberto and C. P. Simpson, d/b/a General Truck Company. We will describe and discuss the exhibit in more detail later in this opinion.
The instant suit was filed on October 21, 1963. The defendants are Frierson, GMC and the widow and heirs of Frederick Liberto. The petition prays for judgment against all defendants, in solido, in favor of the State of Louisiana in the amount of $1,020, plus interest, penalties and attorney’s fees and in favor of the City of New Orleans in the amount of $2,894.13, plus interest, penalties and attorney’s fees. Frierson and GMC answered denying liability and averring: (1) the commercial partnership General Truck Company and/or its respective partners alone were indebted to petitioners for the taxes; and (2) lack of due diligence on the part of petitioners in attempting to recover the taxes from General Truck Company and its individual partners or their heirs. Frierson and GMC also filed a third party petition against the Liberto widow and *825 heirs seeking' judgment against them in such amount as might be rendered against the third party petitioners. The Liberto widow and heirs filed pleas of prescription of three and ten years and exceptions of no right and no cause of action to both the main and third party demands; they also filed an answer to the original and third party petitions denying liability on their part.
After trial there was judgment in the district court in favor of the state and city and against GMC in the full amounts as prayed, in favor of all other defendants and against the state and city dismissing their suit as to those defendants, and in favor of the Liberto widow and heirs and against Frierson and GMC on the third party petition, dismissing that petition. GMC has appealed therefrom. No other litigant has appealed or answered the appeal taken by GMC.
Thus only two questions are presented for our consideration: (1) the correctness of that part of the judgment which is in favor of the original petitioners and against GMC, the only defendant cast; and (2) if that portion of the trial court judgment is correct, whether there should be judgment on the third party petition in favor of GMC, a third party petitioner, and against the Liberto widow and heirs, third party defendants. No other portion of the trial court judgment is before us.
Under the law of Louisiana there is a fundamental distinction between taxes levied on immovable property and those levied on movable property. Immovable property taxes are exclusively a charge upon the property assessed, collectable only out of that property, and neither the owner of the property, nor any other -of his property, is liable for the taxes; movable property taxes are a personal liability of the person properly assessed therewith and are collectable out of any property belonging to that person. . Since the same property cannot be taxed twice in the same year and regardless of when assessments must or may be completed, assessments of movable property must be made only in the name of the person who owns the property at the time fixed by law and that person alone is personally liable for the tax. Levy v. M. M. Ullman & Co., 176 La. 997, 147 So. 57; Louisiana Oil Refining Co. v. Louisiana Tax Com’n, 167 La. 605, 120 So. 23; State ex rel. Cain v. H. D. Foote Lumber Co., 17 La.App. 234, 135 So. 769.
In parishes other than Orleans assessments must be made on the basis of the condition of things existing on the first day of January of each year; the assessment must be made against the owner of the property as of that date. LSA-R.S. 47:1952. However, in the Parish of Orleans prior to the adoption of Act 125 of 1959 which amended LSA-R.S. 47:1994, the status (i. e., insofar as we are here concerned, the ownership) of movable property on the first day of August of each year determined liability for taxation for the following calendar year. LSA-R.S. 47:1703 and 47:1994; see Hendricks v. Orleans Parish School Board, 238 La. 943, 951, 117 So.2d 66, 69. We note that Act 125 of 1959, which provided that the status of Orleans property as of January 1st of each calendar year determined liability for taxes during that year, was amended by Act 316 of 1962, which changed the date back to August 1st of the preceding year.
In the instant case petitioners seek, and have obtained against GMC, a personal judgment for 1955 taxes allegedly due on movable property located in the Parish of Orleans. But, as we have just said, under our law the only one personally liable for the payment of those taxes was the owner ,of the property on August 1, 1954. As Frederick Liberto and C. P. Simpson, d/b/a General Truck Company owned the property here involved on August 1, 1954, the assessment thereof legally could be made only against those partners or that commercial partnership, and only those partners or that partnership could be held *826 personally Hable fbr the taxes. In this case it is immaterial whether the personal liability extended only to the partnership, to the individual partners or to either of the latter. We do not decide that question, although under Converse v. Fitzpatrick, 135 La. 619, 65 So. 761, it would appear that only the partnership itself was so liable. In any event GMC was and is not personally liable for the taxes and the judgment rendered in favor of the petitioners and against that corporation must be reversed unless GMC is liable on the bond it furnished the state and city.
The record contains only an undated and unsigned copy of the bond in question; the original appears to have been lost. But counsel for GMC concede the bond is still in effect and that the copy in evidence conforms therewith. The evidence is to the effect that the bond was given shortly before October 10, 1957, the date on which the Tax Commission ordered cancellation of the assessment in the name of Frierson and levied the assessment against Liberto and Simpson, d/b/a General Truck Company. As we have pointed out, the bond contained a "due diligence” clause. More specifically, after reciting the amounts of the taxes due and the agreement under which the assessment was to be made to General Truck Company, under which agreement the state and city were to collect the taxes from the partners (Simpson and Liberto) individually and as general partners of General Truck Company, the bond provided: “ * * * the said Principal and Surety do hereby agree to pay the said amount in the event that same cannot be recovered by the said State of Louisiana' and/or City of New Orleans from the said C. P. Simpson and Frederick Liberto, as general partners of the General Truck Company, or individually, after the exercise of due diligence in the attempt to recover same from the said persons by the State of Louisiana and/or the City of New Orleans.”
The question before us is whether the state and city exercised due diligence in the performance of their obligation to collect the taxes from the true tax debtor as; required by the quoted bond provision.
Article 19, Section 19 of the Constitution of 1921 provides, in pertinent part, that all taxes, other than real property taxes, shall prescribe in three years from the 31st of December in the year in which such taxes; are due. Therefore, in the absence of anything which might prevent the running of the prescriptive period, the 1955 taxes in the instant case were prescribed on January 1, 1959. Petitioners contend that the running of prescription was interrupted by the filing of the suit by Frierson against the taxing authorities and others, relying on the pertinent provision of LSA-R.S. 47:-2111, and by the alleged notice of seizure to which we have briefly referred in our recitation of the facts. We do not agree with the contention.
LSA-R.S. 47:2111 does provide that, as to tax privileges and tax mortgages granted by law to secure the payment of ad valorem taxes, the prescription of three years is interrupted by the pendency of any suit which prevents the collection of said taxes. But the simple answer to this part of petitioners’ contention is that the suit in question did not in any way prevent the collection of the taxes from Simpson and Liberto, d/b/a General Truck Company. Despite the suit for an injunction by Frierson, the state and the city were free to proceed against the partners,, or their heirs, and the partnership. And. we are concerned here only with the running of prescription against those partners,, or their heirs, and that partnership.
The alleged notice of seizure upon which' petitioners rely is an exhibit which was offered by them in evidence. It consists-of only one page. The top part, dated December 29, 1958, is directed to “F. Kellar”,, who is described as a Deputy Tax Collector, and instructs him to seize and sell sufficient property of the delinquent tax debtor, Frederick Liberto and C. P. Simpson d/b/a General Truck Co., to satisfy *827 the claim of the state for taxes, interest, etc. That top part is signed by “F. Kellar”. The two parts are separated by a line. The lower part, which is undated, is directed to Frederick Liberto and C. P. Simpson d/b/a General Truck Co. It reads: “Take Notice that I have seized Merchandise, Furn. .& Fix., Machinery and All other articles for taxes, interest, costs and penalties * * * ” and states that unless the delin•quent taxes are paid within three days the :said property will be advertised and sold according to law. This lower part is also .signed by “F. Kellar”. The evidence reveals that the above described document was mailed by the State Tax Collector to •the attorneys for GMC and Frierson during ■the early part of June, 1959 and that, on June 18, 1959, those attorneys mailed the •document to the attorney for the Liberto ■widow and heirs. The evidence further reveals that no property was ever actually seized as stated in the document.
Apparently the alleged notice of •seizure was attempted to be given under the provisions of LSA-R.S. 47:2172. But -that section requires an actual seizure of -property; the tax collector must give the notice of seizure in writing “ * * * immediately after actually taking the property into his possession, or placing a keeper -thereon.” The alleged notice was not served on anyone until after the expiration of the three year prescriptive period. And without an actual seizure clearly the’ notice can have no effect on the running of prescription.
We are convinced that the taxes owed by the partnership, General Truck Company, or by its partners, Simpson and Liberto, were prescibed by the running of the three year period provided by Article 19, Section 19 of the Constitution of 1921.
The bond having been given shortly before October 10, 1957, and January 1, 1959 being the date upon which prescription accrued on the taxes, the state and city had more than a year and two months before such accrual in which to proceed with the collection of the taxes as they were required to do by the bond. Despite this fact, during all of that time they made no effective attempt to collect the taxes and allowed the prescription to run. Certainly this is not the exercise of such “due diligence” as was contemplated by the bond and we so hold.
In view of our conclusion that the judgment against GMC is erroneous and will be reversed, we must affirm that portion of the judgment appealed from which is in favor of the Liberto widow and heirs and against GMC on the third party petition, dismissing that petition.
For the reasons assigned, those portions of the judgment appealed from which are in favor of the State of Louisiana and against General Motors Corporation (GMC Truck & Coach Division) in the amount of $1,020, together with penalties, interest and attorney’s fees and in favor of the City of New Orleans and against General Motors Corporation (GMC Truck & Coach Division) in the amount of $2,894.13 with penalties, interest and attorney’s fees are reversed and the judgment is amended to the end that the same shall be in favor of General Motors Corporation (GMC Truck & Coach Division) and against the State of Louisiana and the City of New Orleans, dismissing the suit by the said state and city against that defendant. As thus amended and in all other respects the judgment appealed from is affirmed.
Reversed in part; amended and affirmed in part.