O'NIELL, C. J., absent during the argument, takes no part.

ST. PAUL, J., absent on account of illness, takes no part.

147 So. 57

**LEVY v. M. M. ULLMAN & CO.**

No. 31389.

Feb. 27, 1933.

Walter M. Barnett, Jr., of New Orleans, for appellant.

Milling, Godchaux, Saal & Milling and Lawrence K. Benson, all of New Orleans, for appellees.

ST. PAUL, Justice.

Plaintiff was a retail clothing merchant; also the owner of the premises in which he conducted his said business. He sold his stock of merchandise to defendant for $55,000, with the understanding that whatever net profits should be realized thereon above $50,000 should be equally divided between plaintiff and defendant. The net profit did not exceed said sum, and therefore that feature, which originally figured in the case, has now vanished from it.

I.

This sale of stock was made in April. Later during the year, the tax collector demanded of plaintiff the taxes due on said property, which plaintiff paid under coercion, insisting that said taxes were due by defendant. And he now seeks re-imbursement from defendants.

In Louisiana Oil Ref. Co. v. La. Tax Commission, 167 La. 605, 120 So. 23, this court held that, no matter at what time of the year the actual assessment on personal property might be made and the taxes thereon based afterwards paid or demanded, the liability for such tax arose on January 1st, and was a personal obligation of the owner of said property on said date.

Accordingly, plaintiff owed these taxes before he sold the stock of merchandise to defendants; they were a personal liability of his as much as any other obligation of his then due, even though not then demandable; and defendants were not obligated to reimburse these taxes as a "liability or expense * * * arising out of the operation of said business"; for the simple reason that such

obligation did not "arise out of the operation of said business," but already existed before the operation of such business had begun.

Thus, had plaintiff sold his entire stock of merchandise on January 2d, received the price, delivered the stock, and had it removed from the premises, he would still have been liable for these taxes; yet it is difficult to see how he could thereafter demand from the purchasers reimbursement for such taxes. The fact that the purchasers did not remove the stock from the premises does not alter the situation; for the plain intent of the contract, stripped of verbiage, was simply that defendants should purchase the stock, dispose of it entirely at their own expense, retain the net profits up to $50,000, and divide the surplus, if any, with the plaintiff. Such disposal of the stock purchased was the only business operation contemplated by the parties. Plaintiff was not concerned with, and did not intend that he should be liable for, any of the expenses of so doing; and defendants were not concerned with, and did not intend that they should be liable for, any of the personal obligations of plaintiff existing at the date of the purchase, whether then demandable or not.

We repeat: Had the stock of goods been removed from the premises and sold elsewhere, even plaintiff himself would never have supposed that he was entitled to reimbursement for the taxes thereon; the fact that the merchandise was *not* removed from the premises is the coincidence which has brought on the confusion, but that circumstance does not affect the respective right of the parties.

## II.

Defendants leased plaintiff's building for the purpose of selling out the stock of merchandise they had purchased from him. Afterwards they renewed the lease for a term and sublet the premises to one Lou Welsh, who also conducted therein a "selling out" business as defendants had done before. And plaintiff knew that such was the business being carried on therein. Of course the "bally hoo" streamers, posters, and dodgers generally used in "selling out" campaigns do not improve the superficial appearance of the building in which they are used, but they do not necessarily injure it permanently.

When Welsh surrendered the premises and plaintiff decided to go back into business, he saw the building as it was. He concluded that the building had been much abused, and immediately proceeded to renovate it for the opening. This he would doubtless have done anyhow; for as an old and experienced merchant he must have known that an attractive store is conducive to better business, and that the site of a "selling out" business cannot be kept as dainty and immaculate as a lady's boudoir.

The evidence is conflicting, and, whilst a microscopic examination of the premises might disclose that the premises had suffered a bit from the rough-and-tumble business which had been carried on in it (with plaintiff's full knowledge, and apparently to his satisfaction, since he was receiving good rent for a store which he afterwards could not rent at all. Cf. Ullman v. Levy, 172 La. 79, 133 So. 369), nevertheless the alleged damage to the premises is so grossly exaggerat-

ed that plaintiff's claims are entitled to no weight; and the great preponderance of the evidence is that the premises were not abused or subjected to any more severe or unusual treatment than was to be expected from the fact that it was a crowded business place and the wear and tear thereon such as might be looked for under the circumstances.

The trial judge could not find that plaintiff was entitled to the damages claimed. And we see no reason to differ from his conclusions.

The judgment below was for defendant, and it appears to us correct.

### Decree.

For the reasons assigned, the judgment appealed from is affirmed.