Mrs. Anna Terranova CATALANO and Mrs. Rosemary Catalano Loup, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 27506.

United States Court of Appeals, Fifth Circuit.

Dec. 16, 1969.

Louis C. LaCour, U. S. Atty., Joan Elaine Chauvin, Asst. U. S. Atty., New Orleans, La., Johnnie M. Walters, Asst. Atty. Gen., Michael B. Arkin, Lee A. Jackson, Attys., U. S. Dept. of Justice, Tax Division, Jonathan S. Cohen, Jr., Atty., U. S. Dept. of Justice, Washington, D. C., Peter Winstead, Atty., U. S. Dept. of Justice, Tax Dept., Fort Worth, Tex., for defendant-appellant.

Albert B. Koorie, Benjamin E. Loup, New Orleans, La., for plaintiff-appellee.

Jerome J. Reso, Jr., Solomon S. Goldman, New Orleans, La., Richard E. Gerard, Lake Charles, La., for amicus curiae.

Before RIVES, BELL and DYER, Circuit Judges.

DYER, Circuit Judge:

The United States appeals from a judgment awarding plaintiffs a refund of estate tax deficiencies in the amount of $4,295.76, with interest. The judgment was based on the District Court's determinations that: (1) decedent did not possess incidents of ownership in one-half of the proceeds of a policy of life insurance on his life and this sum

should therefore not be included in his estate, and (2) the estate was entitled to deduct real estate taxes for 1959 in the amount of $596.63 from the gross estate because the liability therefor had become an enforceable obligation of the decedent at the time of his death. We agree with the first of these determinations but not with the second. Accordingly, we affirm in part and reverse in part.

The case was tried before the District Judge upon fully stipulated facts, depositions and exhibits. We will deal first with the life insurance issue and then with the question of the real estate tax deduction.

## I.

In 1958 William Catalano applied for a life insurance policy in the face amount of $25,000 with the Manhattan Life Insurance Company of New York, and apparently requested that his wife be designated the owner as well as the beneficiary. The policy as issued designated him the owner so he returned it to the company with a written request that his wife be substituted as the owner. The company returned the policy to decedent with the following endorsement:

> The owner of this policy is Anna T. Catalano, wife of the Insured. All options, privileges, values and benefits granted by this policy to the Insured or to the Insured's estate shall belong to said owner or her executors or administrators, anything in this policy to the contrary notwithstanding.

All premiums were paid with community funds (Louisiana is a community property state). Catalano died intestate in October 1959, a domiciliary of Louisiana, and the insurance company paid the $25,000 proceeds of the policy directly to decedent's wife as beneficiary.

The Commissioner assessed and collected a deficiency based upon his determination that decedent possessed incidents of ownership in one half of the proceeds of the policy because the policy was part of the community of acquest and gains of the marriage. This suit for refund followed.

Under Section 2042 of the Internal Revenue Code of 1954 life insurance proceeds are included in a decedent's gross estate if, at his death, he possessed any "incidents of ownership, exercisable either alone or in conjunction with any other person." It is undisputed in this case that decedent possessed no "economic" incidents of ownership within Treas.Reg. § 20.2042–1(c) (2). Whether he possessed any "legal" incidents of ownership is to be determined with reference to the applicable state law. Lang v. Commissioner of Internal Revenue, 1938, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331; Freedman v. United States, 5 Cir. 1967, 382 F.2d 742; Scott v. Commissioner of Internal Revenue, 9 Cir. 1967, 374 F.2d 154; Treas.Reg. § 20.2042–1(c) (5).

It is true, as the government urges, that under Louisiana law all assets acquired during the marriage are presumed to be community property, La.Civ.Code, Art. 2405, and that the presumption is not rebutted by the fact that title to a particular asset is held solely in the name of one spouse. *E. g.,* De Maupassant v. Clayton, 1949, 214 La. 812, 38 So.2d 791; Johnson v. Johnson, 1948, 213 La. 1092, 36 So.2d 396.

However, as the District Court correctly stated, in Louisiana a life insurance policy is a contract *sui generis,* governed by rules peculiar to itself. It is the outgrowth of judicial precedent and not of legislation, and, as such, it is not governed by the articles of the Louisiana Civil Code as to ownership of the policy itself or as to ownership of the proceeds. Sizeler v. Sizeler, 1930, 170 La. 128, 127 So. 388. Even though it is a community property state, Louisiana long ago established the clear precedent under its jurisprudence

> [T]hat a policy of insurance, issued at the instance of the husband, upon his own life, in favor of his wife, inures to her separate benefit from the date of its issuance, and that the interest

so acquired by the wife is not then or thereafter affected by the fact that the premiums are paid by the husband from the funds of the community.

\* \* \*

Succession of Desforges, 1914, 135 La. 49, 64 So. 978, 981; accord Lambert v. Penn Mutual Life Insurance Company, 1898, 50 La.Ann. 1027, 24 So. 16; Putnam v. New York Life Insurance Company, 1890, 42 La.Ann. 739, 7 So. 602; Pilcher v. New York Life Insurance Company, 1881, 33 La.Ann. 322.

■ The government asks us to disavow these precedents on the basis that they are old and that in more recent cases Louisiana has recognized that life insurance policies acquired during marriage are subject to the general rules and presumptions governing community property in Louisiana. We reject the government's argument and find that the nearly century old rule—that life insurance policies acquired during marriage in which the wife is irrevocably named the beneficiary inure to her separate estate—is alive and well in Louisiana. The three cases relied on by government are all distinguishable from the older cases and from the instant case. Messersmith v. Messersmith, 1956, 229 La. 495, 86 So.2d 169, involved a policy in which the *insured himself* was the beneficiary. Berry v. Franklin State Bank & Trust Company, 1937, 186 La. 623, 173 So. 126, and Pollock v. Pollock, 1928, 164 La. 1077, 115 So. 275, are inapposite because they involved policies in which the beneficiary could be changed. Furthermore, the doctrine of the older cases (*Desforges, Lambert, Putnam and Pilcher, supra*) was recently reaffirmed in Scott v. Scott, La.Ct.App.1965, 179 So.2d 656. In discussing the rights of a beneficiary under a life insurance policy where no right is reserved to change the beneficiary, *Scott* pointed out that under Louisiana law the insured's possession, vel non, of the right to change the beneficiary of a life insurance policy determines whether the insured possesses any other policy-rights; and the insured's irrevocable designation of a beneficiary

vests the policy-rights, as well as the proceeds-rights, in the beneficiary. *Id.* at 657. In the instant case, once the wife was named the owner of the policy, all power to change the beneficiary by decedent was extinguished. Therefore, as far as the decedent was concerned, his wife was the irrevocable beneficiary and, as a matter of Louisiana law, the policy-rights and proceeds-rights became part of her separate estate. Succession of Desforges, *supra.*

Nevertheless, the government urges that Freedman v. United States, 5 Cir. 1967, 382 F.2d 742, is controlling. There, the decedent insured her life and named her husband the beneficiary. He signed as the owner. We held that the policy was owned by the marital community and that one-half its value was includable in the wife's gross estate. We noted that under Texas law property purchased with community funds is presumed to belong to the community even though title is in the name of one spouse only. To rebut the presumption Texas requires a showing that the unnamed spouse intended a gift of her community interest. We said there was no affirmative act which would clearly reflect such an intention, and that in the absence of a clause expressly purporting to transfer Mrs. Freedman's community interest to her husband's separate estate, it must be assumed that she merely agreed that he should own the policy as the community's agent.

If there were no controlling Louisiana law we might well find *Freedman* persuasive. But *Freedman* dealt with the law of Texas and we cannot accept the government's sweeping conclusion that the same rules of community property are followed in Texas and Louisiana. The Louisiana jurisprudence is well settled that life insurance policies on the life of the husband unconditionally owned by the wife or in which she is the irrevocable beneficiary are, as a matter of law, deemed part of her separate estate. They therefore are not within the Louisiana presumption that all property acquired during the marriage is commu-

nity property. Moreover, LSA–R.S. 22:1521 provides that donations inter vivos of life insurance policies and the naming of beneficiaries therein are not governed by any other provisions of Louisiana law relative to the form of donations inter vivos. Thus, no formal act is necessary to complete the gift and it is not necessary for us to find a specific, affirmative act of donative intent as it was when we were considering Texas law in *Freedman*.[1] *See, e. g.,* Sizeler v. Sizeler, *supra.*

We hold that where a husband takes out a policy of insurance on his life and either irrevocably names his wife the beneficiary or makes her the owner of the policy, he retains no interest in the proceeds of the policy under Louisiana law and; therefore, no "incidents of ownership" within Int.Rev. Code, § 2042.

## II.

At his death the decedent owned certain real property in Orleans Parish, Louisiana. The Commissioner disallowed a deduction of $596.63, which represented decedent's one-half community interest in the 1959 state property taxes paid to Louisiana after decedent's death on this property. The tax rolls were delivered to the State Tax Collector for the Parish of Orleans during May 1959, and the collector commenced to collect the taxes on October 1, 1959. Decedent died on October 3, 1959. The tax rolls were not filed in the office of the recorder of mortgages until November 4, 1959. The Commissioner's disallowance of the deduction was based upon his determination that the real estate taxes had not accrued by the time of decedent's death as required for deductibility under Int. Rev.Code of 1954, § 2053. The District Court held to the contrary, finding that the state property taxes had become an obligation of decedent by October 1, 1959 at the latest.

Section 2053 gives the right to deduct property taxes in an estate tax return except those taxes not accrued before the decedent's death. Treas.Reg. § 20.2053–6 provides that a property tax has accrued if it is an "enforceable obligation of the decedent at the time of his death." Whether a property tax has become an enforceable obligation is determined by state law. Mack v. United States, E.D.Wis.1958, 160 F.Supp. 421; *see* United States v. Stapf, 1963, 375 U. S. 118, 84 S.Ct. 248, 11 L.Ed.2d 195; Union Trust Company v. Tomlinson, 5 Cir. 1966, 355 F.2d 40; First-Mechanics National Bank v. Commissioner of Internal Revenue, 3 Cir. 1940, 117 F.2d 127. Plaintiffs argue alternatively that the taxes were an enforceable obligation of decedent from January 1, 1959, because the State has a privilege on the property from the first day of the year and that the taxes were due and collectible on October 1, 1959, at the latest, the date when the collector began collecting them, and became an enforceable obligation at that time even though not then collected from decedent.

Plaintiffs are wrong in their assertion that there is a privilege on the property from January 1 of the tax year. While LSA–R.S. 47:1997 provides that the col-

1. It was suggested in briefs by appellees and amicus curiae and in the opinion of the District Court that the instant case is distinguishable on its facts from *Freedman* in that Catalano's written request to the insurance company to change ownership of the policy to his wife supplied the specific, affirmative act of donative intent missing in *Freedman*. Because of our determination that Louisiana requires no such specific act, we do not reach that question.
Nor do we reach the question that *Freedman* might be distinguishable because it involved a policy in which the husband and not the wife was the beneficiary and owner. *Freedman* said that in the absence of a specific, affirmative act showing an intention to transfer Mrs. Freedman's community interest to her husband's separate estate, it must be assumed that she merely intended to transfer her interest to him as the agent of the community. Amicus curiae suggested that because a wife cannot be the agent for the community, a different result would have been reached in *Freedman* if the policy had been issued on the life of the husband, with the wife being owner and beneficiary.

lection of taxes shall begin on the first day of the year, no lien arises on the assessed property until the tax rolls are filed in the office of the recorder of mortgages, LSA–R.S. 47:1993. A privilege is nothing more than a high priority lien or security interest. La.Civ.Code, Art. 3186. La.Const. Art. XIX, § 19 relied on by plaintiffs says nothing about the time when a privilege arises; it merely provides that a privilege or other tax lien in favor of the state need not be recorded in order to be valid against third persons.

 Plaintiffs' argument that the taxes could have been paid any time after January 1 and that in any event they became an enforceable obligation on October 1 when the collector began collecting the taxes has surface appeal, but it does not survive a close examination of Louisiana law. The status and value of property in the Parish of Orleans on August 1 of each year fixes the taxes for the following calendar year. LSA–R.S. 47:1994. However, taxes are due and collectible and become a lien on the property assessed only when the tax rolls are filed with the recorder of mortgages (November 4, 1959 in this case). LSA–R.S. 47:1993, 47:2101; Carondelet Building Company v. Fontenot, 5 Cir. 1940, 111 F.2d 267; Charles Wirth Realty & Investment Company v. Tropical Clothing & Manufacturing Company, La.Ct.App.1935, 160 So. 455, original decree reinstated on reconsideration, 161 So. 908; Ducote v. City of New Orleans, La.Ct.App.1966, 193 So.2d 349, writ refused, 250 La. 271, 195 So.2d 148. There is no question that when the lien attaches the taxes become an enforceable obligation of the decedent within Section 2053 of the Code and Treas.Reg. § 20.-2053–6. See, e. g., Thompson v. United States, D.Minn.1925, 8 F.2d 175; Estate of Seagrist, 42 B.T.A. 1159 (1940); Claiborne v. Commissioner of Internal Revenue, 40 B.T.A. 722 (1939). They would also be an enforceable obligation

before the lien date if they become due and payable prior to the lien date. Estate of Pardee, 49 T.C. 140 (1967).[2]

 Notwithstanding that the tax due date and lien date was November 4, subsequent to decedent's death, plaintiffs contend there was an enforceable obligation of decedent to pay the property taxes before his death. They rely on Union Trust Company v. Tomlinson, 5 Cir. 1966, 355 F.2d 40, which held that an intangible personal property tax assessed on property owned on January 1 but which did not, under Florida law, become due and payable until November 1 of the year had accrued at the time of decedent's death in August of the year. The rationale for this holding was that

> [E]ven if decedent had disposed of his property after January 1st, he would still be liable for the tax thereon. Thus * * * these taxes had not merely accrued in an accounting sense, but had become an absolute liability of decedent's estate on January 1, 1958, even though not payable until November. *Id.* at 43.

If we were dealing with personal property in this case we might find *Tomlinson* conclusive of the issue because Louisiana, as Florida, holds that the taxpayer himself is personally liable for taxes on his movable property from the first of the year. Levy v. M. M. Ullman & Company, 1933, 176 La. 997, 147 So. 57; State v. Liberto, La.Ct.App.1966, 181 So.2d 822. However, as to immovables, Louisiana holds that the tax is a charge only on the property itself—the owner is not personally liable and the tax liability cannot be satisfied out of any other of his assets. Carondelet Building Company v. Fontenot, *supra*; Ducote v. City of New Orleans, *supra*; State v. Liberto, *supra*. Thus, it would have been possible for the decedent in the instant case, unlike the decedent in *Tomlinson*, to have conveyed his land before his death and to have escaped liability for the tax-

2. Carondelet Bldg. Co. v. Fontenot, 5 Cir. 1940, 111 F.2d 267, indicates that tax liability can accrue in Louisiana before the due date (i. e., the date the tax rolls are filed with the recorder of mortgages) if the taxpayer assumes and pays the liability before that date. This was not done in the instant case.

es. While the property would still be assessed in decedent's name because he owned it at the time of assessment, the state would be able to satisfy the liability only out of the land itself, and the purchaser, not the decedent or his estate, would bear the impact of the state property tax (assuming no contractual obligation by decedent to the purchaser to pay the taxes). Since, at the time of his death, decedent could have escaped all liability for the taxes which were not yet due and not yet a lien on his land, it is clear that the tax liability had not yet accrued within § 2053 of the Code.

We agree with the District Court that decedent did not possess incidents of ownership in one half of the proceeds of a policy of life insurance on his life and that this sum should not have been included in his estate. The judgment awarding a refund insofar as it represents this amount is affirmed. We do not agree with the District Court that the real property taxes had, under Louisiana law, become an "accrued" obligation of the decedent at the time of his death. The judgment awarding a refund insofar as this amount is concerned is reversed. The case is remanded to the District Court for further proceedings, consistent with this opinion.

Affirmed in part and reversed in part.