255 So.2d 883 (1971)
Beverly Williams McELWEE
v.
William Tandy McELWEE, Jr.
No. 11694.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1971.
Rehearing Denied January 4, 1972.
Writ Refused February 21, 1972.
*885 Paul Henry Kidd, Monroe, for appellant.
Campbell, Campbell, Marvin & Johnson by John T. Campbell, Minden, for appellee.
Before AYRES, BOLIN and PRICE, JJ.
En Banc. Rehearing Denied January 4, 1972.
PRICE, Judge.
These appeals arise out of protracted litigation initially begun by Beverly Williams McElwee seeking a separation from William Tandy McElwee, Jr., together with a rule for alimony pendente lite and injunctive relief to restrain any disposition of community assets. Alimony was awarded Beverly McElwee in the sum of $310 per month beginning October 5, 1966. Judgment of separation was granted her on December 15, 1966, along with a permanent injunction as prayed for. A final divorce was awarded to Tandy McElwee on June 4, 1968.
In March, 1968, Beverly McElwee proceeded by rule to have the sum of $5,070 declared due and owing under the judgment for alimony pendente lite and to have Mr. McElwee cited for contempt for failure to pay same. In response to this rule, Tandy McElwee pleaded offset and compensation by alleging Beverly McElwee was in possession of community funds in excess of the amount of accrued alimony and had converted these funds to her own use. The trial court rendered judgment rejecting Beverly McElwee's demands under this rule.
Pursuant to an order of the court, an inventory and accounting of the assets, liabilities, income and expenses of the community was made by a Notary Public and auditor mutually agreed to by the parties Each party filed rules to traverse certain of the items listed in the inventory and from the judgment resolving these issues both parties have appealed. Beverly McElwee also has appealed from the judgment rejecting her rule for accrued alimony.
Counsel for Beverly McElwee contends the trial court erred in the following respects:
(1). In holding accrued alimony pendente lite was compensated by the appropriation of the wife to her own use of community funds in excess of that due as alimony.
(2). In concluding a $15,000 savings account in the name of Beverly McElwee in Planters Bank & Trust Company was properly listed in the inventory as a community asset rather than her separate property.
(3). In holding a life insurance policy issued by New York Life Insurance Company on the life of William T. McElwee, designating Beverly McElwee as owner and their daughter as beneficiary, belonged to the community rather than the separate estate of Beverly McElwee.
(4). In failing to allow Beverly McElwee the full sum claimed as *886 advances from her separate estate to the community to pay for the indebtedness on the family home and for furnishings purchased for same.
(5). In rejecting the claim of Beverly McElwee that the community owned a one-third interest in a 641 acre tract of land acquired during the marriage in the name of William T. McElwee, Jr.; and in rejecting the alternative plea that in the event the court held the community had no ownership interest in the property, the separate estate of Tandy McElwee is indebted to the community for the value of the increase or ameliorations in the land by expenditure of community funds thereon during the marriage.
(6). In holding Beverly McElwee had possession of certain movables belonging to the community.
(7). In allowing as a credit to the separate estate of Tandy McElwee the payment of various debts of the community from his separate funds, when proof of payment was insufficient.
(8). In fixing the fee of the court appointed notary public and auditor at $1,000.
(9). In ordering the assets of the community sold to effect a partition without benefit of appraisement.
(10). In denying Beverly McElwee's application for a new trial.
Counsel for Tandy McElwee contends the court erred in the following respects:
(1). In holding the community owned no interest in a 180 acre tract of land acquired during the marriage in the names of Mr. and Mrs. McElwee.
(2). In holding a 20 acre tract of land in Columbia County, Arkansas, acquired in the name of Tandy McElwee, was community property.
(3). In finding Beverly McElwee was entitled to reimbursement of $5,244.97 paid on the mortgage on the family home. We shall discuss the issues in the order presented by counsel in brief to this court as specific assignments of error.

BEVERLY McELWEEASSIGNMENT OF ERROR (1):
The trial judge rejected Mrs. McElwee's demand for a money judgment susceptible of execution for the amount accrued under the alimony judgment on a finding that offset and compensation had taken place by Beverly McElwee having possession of community funds in excess of that owing to her under the judgment, and on further finding she had appropriated portions of these funds to her own use. Counsel for Beverly McElwee complains that this finding was premature in that no determination had been made by the court of the classification of these funds at the time of rendition of this judgment, and that although she might ultimately be required to compensate for this amount in a settlement of the community, she should not be deprived of her right to an immediate judgment to enforce payment from her husband. Although counsel's argument has merit, it has now become moot as this issue has now been absorbed into the liquidation of the community affairs. Her remedy at the appropriate time should have been by application for writs under the supervisory jurisdiction of the court.
Although counsel omitted this issue from his specification of error, he argued in brief that the amount of accrued alimony pendente lite ($5,070) should not be charged against the community but against the separate estate of the husband.
*887 The trial judge held the obligation of the husband to maintain the wife during the marriage in the manner in which she had become accustomed, as recognized and enforced by La.Civ.Code Article 148, should be discharged by community funds, if available. Although the jurisprudence on this subject is somewhat confusing, we are of the opinion the trial judge's conclusion is correct under the holdings in the following cases: Cordaro v. Cordaro, 168 So.2d 886 (La.App. 2d cir. 1964); Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956); White v. White, 159 La. 1065, 106 So. 567 (1925).

BEVERLY McELWEEASSIGNMENT OF ERROR (2):

TANDY McELWEEASSIGNMENT OF ERROR (1):
As the resolution of the issues presented in the first assignment of error made by Tandy McElwee affects the first and second specifications of error urged by Beverly McElwee, we shall discuss these matters jointly.
The trial court held that a 180 acre tract of land in Section 19, Township 21 North, Range 4 West, Claiborne Parish, Louisiana, was correctly excluded from the inventory of community effects and was properly listed on the schedule of property belonging to the separate estate of Beverly McElwee. This property was originally a part of a 240 acre tract belonging to Beverly McElwee's mother, Mrs. Alice Meadows. Upon being emancipated by marriage, Beverly McElwee, in 1938, filed suit against her mother for a final accounting as natural tutrix. Pursuant to a monetary judgment against Mrs. Meadows, a writ of seizure and sale was issued directing the sale of the 240 acre tract to satisfy the amount owing under the judgment. The property was purchased at the sheriff's sale by John T. Swann, who transferred the property by cash deed dated March 23, 1939, to Beverly McElwee and her two attorneys in the proportion of an undivided three-fourths to Beverly McElwee and one eighth to each attorney. A partition deed was executed on March 30, 1959, wherein the property was divided in kind with 180 acres being conveyed to Beverly W. McElwee and her husband, William Tandy McElwee, Jr. In support of her position that this property was acquired with separate and paraphernal funds for her separate estate, Beverly McElwee presented a certified copy of an instrument bearing the signature of William Tandy McElwee, Jr., in which it is declared by Tandy McElwee that the tract acquired from Swann and subsequently partitioned between Beverly McElwee and her attorneys, was purchased with funds inherited by Beverly McElwee for her separate estate, and that he appeared in the partition deed for convenience only. Tandy McElwee further declared the community had no interest in the property. Although the instrument was prepared for execution before a notary and two witnesses, the authentication was never completed. The first paragraph suggests it was prepared in April, 1959, and the evidence reveals the document was not recorded until after the parties separated.
Tandy McElwee contends the 180 acre tract is presumed to be community property under La.Civ.Code Article 2402 because it was acquired during the marriage. Fortier v. Barry, 111 La. 776, 35 So. 900 (1904); Houghton v. Hall, 177 La. 237, 148 So. 37 (1933); Montgomery v. Bouanchaud, 179 La. 312, 154 So. 8 (1934); Betz v. Riviere, 211 La. 43, 29 So.2d 465 (1947).
This presumption may be rebutted by the wife upon establishing proof of the paraphernality of the funds used for purchase under her separate administration and control, and that the purchase was made for the benefit of her separate estate. The husband is estopped to deny the paraphernal nature of the property where the deed of acquisition recites the property is purchased by the wife for her separate estate, with separate funds under her own administration and control, and the husband executes the instrument acknowledging *888 these facts to be true. Succession of Barr, 219 So.2d 817 (La.App. 2d cir. 1969).
We think the same rule should extend to an acknowledgment made in a separate instrument executed for this purpose. The Third Circuit Court has so held in the case of Airhart v. Airhart, 153 So. 2d 140 (La.App. 3d cir. 1963). It is immaterial that the instrument is not a notarial act insofar as the parties to the immediate transaction are concerned. See Morgan v. Hathaway, 77 So.2d 169 (La. App. 1st cir. 1954), in which a counter letter was held sufficient on which to base estoppel. We think the evidence is sufficient to establish the genuineness of Tandy McElwee's signature on the instrument. There is no doubt from the evidence that Tandy McElwee understood the significance of the transaction and he does not claim to have executed same through error or as the result of misrepresentation. In fact, in his testimony Tandy McElwee admitted he would have made no claim against this property had Beverly McElwee not claimed an interest in the 740 acre tract in which he contends his ownership therein is his separate property. We find no error in the finding of the trial judge that this property was correctly included on the schedule of separate property belonging to Beverly McElwee.
The evidence reflects that the savings account in the Planters Bank & Trust Company, containing $15,000 (the classification of which is disputed in assignment of error (2) of Beverly McElwee), was established by the deposit of oil and gas royalties derived from leases on the foregoing 180 acres classified as the separate property of Beverly McElwee. She contends the trial judge erred in holding these funds to be community as she, at all times, administered and controlled same.
The trial judge found as a fact that all of the sums presently in the account had accrued since 1944. Under La. Civ.Code Article 2386, as amended by Acts 1944, No. 286, the fruits from the separate property of the wife fall into the community of acquets and gains unless the wife has recorded an affidavit signifying her intent to reserve the fruits and that she intends to administer her separate estate. Beverly McElwee admits no affidavit was recorded complying with this article, but urges royalties from mineral leases are not "fruits" as intended by Article 2386. She relies on the theory advanced in Commissioner of Internal Revenue v. Gray, 159 F.2d 834 (C.C.A. 5th 1947) that oil or gas royalties are in the nature of consuming rents and are not within the purview of fruits intended by Article 2386. We think the trial judge correctly followed the case of Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679 (1952) wherein our Supreme Court refused to follow the reasoning of the Federal Circuit Court and squarely held that oil royalties are fruits within the meaning of this article. Although, conceding the funds presently in the account accrued after the 1944 amendment, Beverly McElwee contends she was not required to execute or record an affidavit declaring an intent to administer the account separately, as her separate administration had begun prior to 1944 and had continued since that date. We do not believe this to be the intent of the amendment. The amendment was intended to affect existing community of acquets and gains as well as those established after its enactment. The trial court thus correctly confirmed the classification of this savings account as a community asset.

BEVERLY McELWEEASSIGNMENT OF ERROR (3):
The third specification of error made by Beverly McElwee relates to the appropriate classification of the cash surrender value of a life insurance policy bought during the marriage by W. T. McElwee naming Beverly McElwee as owner and their daughter, Sandra McElwee, as beneficiary. After the separation of the parties, Mrs. McElwee surrendered the policy to New York Life and received its cash surrender value of $8,119.
*889 On the audit of the community, this item was listed on the separate property of Tandy McElwee, under the authority of Catalano v. United States, 429 F.2d 1058 (CCA 5th, 1969). On trial of the rule to traverse, the trial judge ordered an amendment of the audit to reclassify this item as a community asset and a debt owed by Beverly McElwee to the community.
The court distinguished the Catalano case on its facts from the instant case. In Catalano, supra, the policy was bought by the husband on his own life, listing him as owner and designating the wife beneficiary. Subsequently, the husband executed a written request that the wife be substituted as owner and an endorsement was issued to this effect. The court found this constituted a gift by the husband to the wife, and although all premiums were paid with community funds, the proceeds of the policy on the death of the husband were held to belong to the separate estate of the wife. The court in Catalano, supra, cited the provisions of LSA-R.S. 22:1521 providing that donations inter vivos of life insurance policies are not governed by any other provisions of Louisiana law relative to form of donations inter vivos, and found that the intent to make a donation to the wife may be inferred by the husband's action in taking out a policy on his own life and either designating the wife as irrevocable beneficiary or naming her as the owner of the policy.
The trial judge herein interpreted Catalano to hold that other evidence must be present to clearly show an intent to make a donation to the wife. We think the interpretation to be too limited. In the case of Succession of Videau, 197 So.2d 655 (La.App. 4th cir. 1967), the court held the cash surrender value of life insurance policies taken out by the husband on his life became the separate property of the wife upon the assignment to her of the ownership of the policies, where she was clothed with all indicia of ownership, such as the right to change the beneficiary and to surrender the policy for the cash value. In the instant case, the evidence reflects that Beverly McElwee (as owner) was granted the right to change the beneficiary under the policy in question, and had the right to surrender the policy for its cash value.
We are of the opinion that the designation of Beverly McElwee as owner, inclusive of the full indicia of ownership rights and privileges, renders the policy the separate property of Beverly McElwee, and thus the proceeds derived from the surrender of the policy belong to her separate estate.

BEVERLY McELWEEASSIGNMENT OF ERROR (4):

TANDY McELWEEASSIGNMENT OF ERROR (3):
As these assignments relate to the same item, we shall discuss them jointly.
The trial court, after classifying the house and lot formerly occupied as the family domicile as community property, allowed a credit to the separate estate of Beverly McElwee for the sum of $5,244.97, for the sum expended by her from her paraphernal funds to liquidate the mortgage on this property to Home Owners Loan Corporation in the year 1942. Beverly McElwee contends she should have been given credit for the sum of $8,000 as the evidence clearly shows this amount was withdrawn from her separate account on the date of the payment of the mortgage and the balance over and above that necessary to pay the mortgage was used to purchase furniture and fixtures for the home. Tandy McElwee assigns error to the court's allowance of the credit for payment of the mortgage, contending the account from which the money was drawn was community, even though in the name of Beverly McElwee. We think the evidence shows that prior to the year 1944 (the year of the amendment to La.Civ.Code Article 2386 requiring recordation of an affidavit by the wife declaring her intent *890 to administer her own property), the funds in the savings account herein in question were derived from income received from Beverly McElwee's separate property, under her administration. She offered in evidence the savings account passbook and the check reflecting a withdrawal from the account on the same date that payment was made to Home Owners Loan Corporation. We are of the opinion that the evidence is not only sufficient to establish the credit for the sum of $5,244.97 paid on the mortgage, but that the testimony of Tandy McElwee admits she used the remainder of the sum of $8,000 for the purchase of furniture and furnishings for the residence for which she should be repaid by the community.

BEVERLY McELWEEASSIGNMENT OF ERROR (5):
The trial court rejected Mrs. McElwee's claim that the community owned an undivided interest in a 641 acre tract standing of record in the name of William T. McElwee, Jr., and his two sisters, Mrs. Rosa Swann and Mrs. Mary Lee Green. This property was a portion of a larger tract of land acquired by Tandy McElwee's father, William T. McElwee, Sr., on December 28, 1907. Prior to the death of Tandy McElwee's mother in 1955, she and William T. McElwee, Sr. conveyed 150 acres of this tract to a daughter, Mrs. Shaw, for a recited consideration of $1,000. Subsequent to his wife's death, on April 2, 1955, William T. McElwee, Sr. conveyed all of his right, title and interest in the remaining acreage712 acresto W. T. McElwee, Jr., Mrs. Rosa Swann and Mrs. Mary Lee Green for the recited consideration of $100 and other good and valuable considerations. In 1960, suits were filed by Tandy McElwee, Jr., Mrs. Swann and Mrs. Green, seeking to have these transfers made by their parents set aside as donations in disguise. On October 28, 1960, an agreement was executed by all parties to the litigation compromising their claims. By virtue of this agreement, W. T. McElwee, Jr., Mrs. Swann and Mrs. Green received a quit claim from the other parties to the 641 acre tract herein in question. In this agreement the parties specially declared there was no intent to affect the status of the property insofar as it being separate or community by execution of the instrument.
Beverly McElwee contends that under the provisions of La.Civ.Code Article 2402 the interest acquired by her husband in this property is presumed to be community and that parol evidence should not have been admitted to show the transaction by which the property was acquired was different from that expressed in the conveyance.
Under the provisions of La.Civil Code Article 2334, property acquired by inheritance or by donation is the separate property of the recipient. We think the evidence in the record clearly establishes the transactions by which Tandy McElwee and his sisters acquired title to the property were in truth and fact an attempt by a parent to divide his property among his children while living. Property received by an heir by virtue of a partition by licitation becomes the separate property of the heir. Troxler v. Colley, 33 La.Ann. 425 (1881).
We are, therefore, of the opinion the trial judge correctly classified this property as the separate property of Tandy McElwee.
We do not find the evidence sufficient to sustain Beverly McElwee's alternative plea that the value of this property has been enhanced by the expenditure of community funds and a debt is therefore owed by Tandy McElwee's separate estate to the community under the provisions of La.Civil Code Article 2408. Proof of expenditures alone is not sufficient. There must be evidence showing with some degree of certainty the amount of increase in value the property sustained by virtue of the expenditures.

*891 BEVERLY McELWEEASSIGNMENT OF ERROR (6):
Beverly McElwee assigns as error the ruling of the trial judge that she had possession of certain movable items belonging to the community and was responsible to account for same. These consist primarily of various personal items belonging to Tandy McElwee left at the domicile at the time of the physical separation. This is purely a factual determination made by the trial judge and should not be disturbed unless manifestly erroneous.
The evidence shows all of the items in question were at the family residence at the time Tandy McElwee left the domicile. Beverly McElwee has had continued possession of this property since that time and has denied access to Tandy McElwee. She should, therefore, present evidence to explain the whereabouts of any missing items. Having failed to do this, the trial judge correctly ruled she should account for those items of movable property or the reasonable value of same.

BEVERLY McELWEEASSIGNMENT OF ERROR (7):
The trial court allowed the claims for reimbursement to Tandy McElwee of sums expended by him from his separate estate to pay community obligations. Beverly McElwee questions the correctness of the court's allowance of these amounts on the proof submitted by Tandy McElwee of payment of these items. The obligations paid by him consisted of payments on mortgages owed to the Planters Bank & Trust Company in Haynesville and Commercial National Bank in Shreveport, as well as a number of open accounts to oil well service and supply firms. The principal business or occupation of Tandy McElwee prior to the separation was the acquisition and development of producing oil properties.
The notary appointed to make the audit of the community affairs, Luther Moore, an attorney and certified public accountant, testified that in preparing the audit reflecting these sums due Tandy McElwee for reimbursement, he verified the mortgage payments and the source of the funds used to make the payments by examination of the bank ledger cards and the accounts of Tandy McElwee. As to the items allowed for payment of open accounts, Moore testified he reviewed the supporting invoice and the cancelled checks showing payment of same before including the item on the schedule for reimbursement.
Counsel for Beverly McElwee argues that Tandy McElwee has failed to sustain his burden of proving his demands because of his failure to introduce into evidence at the trial of this cause all of the supporting data on which the credits contained in the audit were based.
Under the best evidence rule this position would usually be well taken. However, the nature of the case requires in some instances a relaxation of this rule. In 29 Am.Jur. 2d, Section 458, this exception to the best evidence rule is discussed as follows:
"The testimony of an accountant or auditor is frequently admitted in cases of this character, where he has examined the documents or books involved and is able to testify as to their contents. The rule is one of convenience which permits an expert to assist the court and jury by summarizing and pointing out salient facts which are difficult to ascertain because of voluminous figures and documents and intricate details of accounting. * * *"
We find no error in the trial court allowing the credit to Tandy McElwee on the basis of the summary and testimony of the auditor appointed in this cause.

BEVERLY McELWEEASSIGNMENT OF ERROR (8):
We find no merit in the complaint that the fee fixed by the court of $1,000 for the notary and auditor is excessive. Mr. *892 Moore is an attorney at law and a certified public accountant. The record reflects he spent considerable time in gathering information, conferences and evaluation of the assets and liabilities of this complex community; therefore, his fee is commensurate with the services rendered.

BEVERLY McELWEEASSIGNMENT OF ERROR (9):
The trial judge found that the assets formerly belonging to the community could not be partitioned in kind but should be sold at public sale to effect a liquidation of the affairs of the community. He directed the sale of the real property on an item-by-item basis and a sale of all household furniture and fixtures as a single item. Office furniture and fixtures were directed to be sold as a separate item. The court allowed each party to retain the automobile now used by them to prevent a serious loss to either because of depreciation.
Counsel for Mrs. McElwee contends the court erred in not ordering an inventory with an appraisal of all property as a prerequisite to ordering a partition by licitation.
We do not find this objection well taken. La.Code of Civil Procedure Article 4605 provides as follows:
"Art. 4605. Preference; appointment of notary; discretion of court
A partition proceeding shall be tried with preference over other ordinary proceedings.
After the trial of the proceeding, if the court finds that the plaintiff is entitled to a partition of the property, the court shall appoint a notary to make the partition in accordance with law.
Except as otherwise provided in Article 4606, the court has discretion to direct the manner and conditions of effecting the partition, so that it will be most advantageous and convenient to the parties."
La.Code of Civil Procedure Article 4606 supplements the foregoing article by providing partitions shall be in kind except where the property is indivisible by nature or cannot conveniently be divided.
It is apparent from the audit made by the court appointed expert that the properties belonging to these co-owners cannot conveniently be divided in kind. There are numerous oil and gas leases, oil and gas royalty interests, and working interests in mineral units which are not susceptible of division in kind. Where the record reflects clearly that the properties cannot be divided in kind, there is no necessity for the court to require additional testimony to this effect. Kilbourne v. Hosea, 19 So.2d 279 (La.App. 1st cir. 1944). Murdock v. Cordova, 180 So.2d 550 (La.App. 3rd cir. 1965).
The purpose of the formal inventory with appraisement as a prerequisite to a partition judgment is to determine whether the property can be divided in kind or must be sold to effect the partition. Where the evidence already before the court establishes the necessity of a partition by licitation, the formal inventory is unnecessary and a useless expense. Barbarich v. Meyer, 154 La. 325, 97 So. 459 (1923); Green v. Small, 227 La. 401, 79 So.2d 497 (1955).
We are of the opinion the trial judge used proper discretion in directing the method of partition and liquidation of the community affairs.

BEVERLY McELWEEASSIGNMENT OF ERROR (10):
The final specification of error presented by this party relates to the refusal of the trial judge to grant a new trial on the issues covered by the preceding specific assignments of error made by counsel and does not require further discussion.

TANDY McELWEEASSIGNMENT OF ERRORS:
This litigant was generally in accord with the rulings of the trial judge and *893 made only three assignment of errors. We have heretofore discussed his first and third assignments of error in conjunction with related matters presented in the assignments made by the opposing party. The remaining assignment presented by Tandy McElwee pertains to the classification of the trial judge of a 20 acre tract of land in the State of Arkansas as being community property. As the record is devoid of any evidence setting forth the law of the State of Arkansas, and as we are not furnished with any citation or argument on this question in brief of counsel to this court, we must affirm the trial court's determination of this issue.
For the foregoing reasons the judgment of the trial court dated April 6, 1971, ordering and directing the method of liquidation of the assets and liabilities of the community of acquets and gains formerly existing between the parties, is hereby amended to allow an additional credit to Beverly Williams McElwee for the sum of $8,119 (the cash surrender value received for the insurance policy for $25,000 issued by New York Life), and the sum of $2,755.03 (the sum advanced by her separate estate for furniture and furnishings in 1942), and Item 7 under paragraph "E" of the judgment is hereby amended to read as follows:
7. Net amount due by Beverly Williams McElwee to the community estate is the amount of $5,999.73.
In all other respects the judgments appealed from are affirmed. Costs of this appeal are to be prorated equally.
Amended and rendered.

APPLICATION FOR REHEARING
Before AYRES, BOLIN, PRICE, HEARD and HALL, JJ.
PER CURIAM:
In application for rehearing Tandy McElwee, Jr., urges we improperly affirmed the trial court's determination that a 20 acre tract of land in the State of Arkansas was owned jointly by the parties hereto. We inadvertently referred to the property having been acquired in the name of Tandy McElwee, Jr., in our original opinion. On further examination of the record in this case, we find no evidence showing in whose name this property was acquired.
Let the applications for rehearing be denied.