T.C. Memo. 2001-210


UNITED STATES TAX COURT


ESTATE OF WILLIAM BLAKE BURRIS, DECEASED,
WILLIAM B. BURRIS III, EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12899-99.                     Filed August 8, 2001.


 H and W resided in Louisiana, a community property
State, throughout their marriage.  During their
marriage, H purchased three policies of insurance on
his life using community funds.  H was named as owner
of the policies, and W was initially designated as the
beneficiary.  W predeceased H, and at H's death the
life insurance proceeds were remitted to his children.

 <u>Held</u>:  The policies of life insurance constitute
community property under Louisiana law such that only
one-half of the proceeds therefrom is includable in H's
gross estate.  Sec. 2042(2), I.R.C.; sec. 20.2042-
1(c)(1), (5), Estate Tax Regs.


<u>Raymond P. Ladouceur</u>, for petitioner.

<u>Susan Smith Canavello</u>, for respondent.

MEMORANDUM OPINION

NIMS, Judge:  Respondent determined a Federal estate tax deficiency in the amount of $82,997 for the estate of William Blake Burris (the estate).  After concessions, the issue for decision is the appropriate treatment for estate tax purposes of three insurance policies on the life of William Blake Burris (decedent).

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

This case was submitted fully stipulated pursuant to Rule 122, and the facts are so found.  The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.  Decedent was a resident of Shreveport, Louisiana, when he died testate in that State on June 18, 1996.  His will was subsequently admitted to probate in the First Judicial District Court, Caddo Parish, Louisiana.  Decedent's son, William Blake Burris III, was named executor of the estate and likewise resided in Louisiana at the time the petition in this case was filed.

On December 17, 1943, decedent married Audrey Shovan Burris (Mrs. Burris). The couple resided in Louisiana, a community property state, throughout their marriage and did not enter into a matrimonial or other agreement separating the spouses in property. During their marriage, between 1987 and 1988, decedent applied for and obtained three policies of insurance on his life: First Colony Life Insurance Policy No. 1319100, First Colony Life Insurance Policy No. 1330053, and Pacific Standard Life Insurance Policy No. 30L0174116. Each was a single premium policy for which the premiums of $150,000, $34,504.32, and $243,000, respectively, were paid with community funds. The policies each provided for payment of a specified death benefit amount and additionally accumulated a cash surrender value. The contract terms also permitted loans against the policies. Effective May 11, 1994, Pacific Standard Policy No. 30L0174116 was taken over by Hartford Life Insurance Company as Policy No. UM0174116.

Decedent was identified as the owner and as the insured with respect to each of the insurance policies.[1] The initial named beneficiary was Mrs. Burris, and such designation was not made to be irrevocable. According to the policy terms, the owner was

---

[1] We note that the record does not contain the complete contract of insurance for either the Pacific Standard policy or its successor Hartford Life policy. However, as neither party has intimated that the terms of these policies differed in any material way from those of the First Colony policies, we assume that the First Colony contracts are representative and that relevant provisions were substantially identical.

granted "all rights" stated therein.  In particular, the policies provided that the owner could change the designation of owner and beneficiary, could surrender the policy for its cash value, and could obtain loans against the security of the policy.

On September 7, 1995, Mrs. Burris predeceased decedent. Following her death, the three children of decedent and Mrs. Burris were made the beneficiaries, in equal one-third shares, of the foregoing life insurance policies.  Decedent then died on June 18, 1996, as indicated above, and the proceeds of the policies were presumably paid to the children.

Subsequently, on October 28, 1996, a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, was filed on behalf of each spouse.  On the Form 706 for Mrs. Burris's estate, one-half of the cash surrender value of the three life insurance policies as of her date of death, an amount equaling $226,070, was included as an asset in her gross estate.  On the Form 706 for decedent's estate, the total amount of the proceeds payable under the three policies, $825,089, was reported as property includable in his gross estate.  The estate now contends, however, that such reporting was erroneous and that only one-half of the proceeds, or $412,544.50, should have been included for gross estate purposes on decedent's return.

## Discussion

### I.  General Rules

As a general rule, the Internal Revenue Code imposes a Federal tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." Sec. 2001(a).  Such taxable estate, in turn, is defined as "the value of the gross estate", less applicable deductions.  Sec. 2051.  Section 2031(a) then specifies that the gross estate comprises "all property, real or personal, tangible or intangible, wherever situated", to the extent provided in sections 2033 through 2045.

Section 2042 governs the treatment of life insurance proceeds and provides in relevant part as follows:

SEC. 2042.  PROCEEDS OF LIFE INSURANCE.

The value of the gross estate shall include the value of all property--

*     *     *     *     *     *     *

(2) Receivable By Other Beneficiaries.--To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * *

Regulations promulgated under section 2042 further explain that "Section 2042 requires the inclusion in the gross estate of the proceeds of insurance on the decedent's life not receivable by or for the benefit of the estate if the decedent possessed at

the date of his death any of the incidents of ownership in the policy". Sec. 20.2042-1(c)(1), Estate Tax Regs. Regulations also define "incidents of ownership":

> For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or the obtain from the insurer a loan against the surrender value of the policy, etc. * * * [Sec. 20.2042-1(c)(2), Estate Tax Regs.]

The above definition is then augmented by the following caveat:

> As an additional step in determining whether or not a decedent possessed any incidents of ownership in a policy or any part of a policy, regard must be given to the effect of the State or other applicable law upon the terms of the policy. For example, assume that the decedent purchased a policy of insurance on his life with funds held by him and his surviving wife as community property, designating their son as beneficiary but retaining the right to surrender the policy. Under the local law, the proceeds upon surrender would have inured to the marital community. Assuming that the policy is not surrendered and that the son receives the proceeds on the decedent's death, the wife's transfer of her one-half interest in the policy was not considered absolute before the decedent's death. Upon the wife's prior death, one-half of the value of the policy would have been included in her gross estate. Under these circumstances, the power of surrender possessed by the decedent as agent for his wife with respect to one-half of the policy is not, for purposes of this section, an "incident of ownership", and the decedent is, therefore, deemed to possess an incident of ownership in only one-half of the policy. [Sec. 20.2042-1(c)(5), Estate Tax Regs.]

II.  Contentions of the Parties

The parties in this case disagree as to the portion of the proceeds from the three policies of insurance on decedent's life which must be included in his gross estate.  The estate contends that only 50 percent is includable, while respondent maintains that inclusion of 100 percent is necessary.  The two sides reach their differing conclusions primarily as a result of their opposing views as to whether, under Louisiana law, decedent possessed incidents of ownership in all or only part of the policies in question.

The estate avers that because the policies were acquired during the marriage with community funds, they are presumed to be community property.  Further, the estate asserts that there exists no evidence of intent on the part of Mrs. Burris that the policies be held as decedent's separate property, as would be necessary to overcome the marital presumption.  Accordingly, it is the estate's position that each spouse possessed an undivided one-half interest in the policies and that decedent, as registered owner, merely acted as managing agent for the community.

In the alternative, the estate argues that if the policies are found to be the separate property of decedent, then a reimbursement claim would exist in favor of Mrs. Burris's successors in interest on the grounds that community funds were

used to purchase the assets.  In that event, the estate alleges that such claim, in the amount of one-half of the cash surrender value of the policies at the date of Mrs. Burris's death, should be allowed as a debt against decedent's estate.

Conversely, respondent alleges that the general rules of Louisiana community property law are inapplicable to the policies at issue in this case.  Rather, respondent contends that Louisiana jurisprudence, particularly as interpreted by the Court of Appeals for the Fifth Circuit in <u>Catalano v. United States</u>, 429 F.2d 1058 (5th Cir. 1969), has established a separate body of law governing life insurance policies.  Moreover, in respondent's view, this body of law stands for the principle that ownership of life insurance policies in Louisiana is determined by the terms of the contract of insurance itself.  Hence, since the contracts here expressly placed all incidents of ownership in decedent, respondent avers that the policies were decedent's separate property and that the full value of the proceeds therefrom is includable in his gross estate.

Additionally, in response to the estate's alternative argument, respondent maintains that the heirs have no reimbursement claim against his estate because any such claim was extinguished upon the death of the insured, because Mrs. Burris's

- 9 -

one-half of the premiums constituted a gift to decedent, and because there has been no proper substantiation of a reimbursement claim.

III.  Analysis

As previously indicated, Louisiana is a community property state.  La. Civ. Code Ann. art. 2334 (West 1985) provides that "The legal regime of community of acquets[2] and gains applies to spouses domiciled in this state".  Spouses may, however, modify or terminate such matrimonial regime by contract.  La. Civ. Code Ann. arts. 2328, 2329 (West 1985).  For purposes of implementing the foregoing principles, all property is classified as either community or separate.  La. Civ. Code Ann. art. 2335 (West 1985).  Moreover, all assets acquired during marriage are presumed to be community property, in which each spouse is considered to own a present undivided one-half interest.  La. Civ. Code Ann. arts. 2336, 2340 (West 1985).  Although this presumption is rebuttable, it is not overcome by merely showing that title is taken in the name of one spouse only.  Catalano v. United States, supra at 1060; Biondo v. Biondo, 99-0890, p.10 (La. App. 1 Cir. 7/31/00), 769 So. 2d 94, 102.  Property "acquired with community things" is also defined generally as community property, while property

---

    [2]  Black's Law Dictionary 23 (7th ed. 1999) defines "acquet" as follows:  "Property acquired by purchase, gift, or any means other than inheritance; profits or gains of property between husband and wife."

acquired prior to marriage, by gift or inheritance to one spouse, or "with separate things" is included in the definition of separate property.  La. Civ. Code Ann. arts. 2338, 2341 (West 1985).

With respect to life insurance in particular, there exists a substantial body of caselaw, at both the State and the Federal levels, that attempts to parse the relationship between such policies and the above community property maxims.  The Court of Appeals for the Fifth Circuit, to which appeal in this case would normally lie, addressed this issue in Catalano v. United States, supra.  In that case the husband acquired a policy of life insurance on his life with community funds and named his wife as both owner and beneficiary.  Id. at 1060.  Upon the husband's death, the Commissioner asserted that one-half of the proceeds should be included in his gross estate under section 2042.  Id. The Court of Appeals, however, reasoned:

> The Louisiana jurisprudence is well settled that life insurance policies on the life of the husband unconditionally owned by the wife or in which she is the irrevocable beneficiary are, as a matter of law, deemed part of her separate estate.  They therefore are not within the Louisiana presumption that all property acquired during the marriage is community property. * * * [Id. at 1061-1062.]

The court then held that "where a husband takes out a policy of insurance on his life and either irrevocably names his wife the beneficiary or makes her the owner of the policy, he retains no interest in the proceeds of the policy under Louisiana law

and, therefore, no 'incidents of ownership' within Int. Rev. Code, § 2042." Id. at 1062. Furthermore, because in these circumstances the policy inured to the wife's separate benefit from the date of its issuance, the court additionally noted that the wife's separate interest was in no way affected by payment of premiums from community funds. Id. at 1060-1061.

In reaching the specific holding just described, the Court of Appeals also made the following broader statement:

> in Louisiana a life insurance policy is a contract sui generis, governed by rules peculiar to itself. It is the outgrowth of judicial precedent and not of legislation, and, as such, it is not governed by the articles of the Louisiana Civil Code as to ownership of the policy itself or as to ownership of the proceeds. * * * [Id. at 1060.]

As support for this proposition, the court cited Sizeler v. Sizeler, 127 So. 388 (La. 1930). Therein the Louisiana Supreme Court, after observing that "a life insurance policy is a contract sui generis, governed by rules peculiar to itself, the outgrowth of judicial precedent and not of legislation", concluded that "the proceeds of life insurance policies form no part of the estate of the deceased, and inure to the beneficiary 'directly and by the sole terms of the policy itself'". Id. at 388-389.

Since 1969, this Court has on several occasions followed the decision in Catalano v. United States, 429 F.2d 1058 (5th Cir. 1969), in requiring an interpretation of Louisiana law under

which a policy on the life of one spouse is deemed the separate property of the other spouse when the noninsured spouse is named as owner and beneficiary of the policy. See Estate of Marks v. Commissioner, 94 T.C. 720 (1990); Bergman v. Commissioner, 66 T.C. 887 (1976); Estate of Saia v. Commissioner, 61 T.C. 515 (1974). Similarly, respondent maintains that here, too, Catalano v. United States, supra, settles the issue in this case in a manner consistent with respondent's position and is binding on this Court pursuant to the rule of Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

In Golsen v. Commissioner, supra at 757, this Court established the rule that we shall "follow a Court of Appeals decision which is squarely in point where appeal from our decision lies to that Court of Appeals" (the Golsen rule). We subsequently have further clarified the doctrine's reach, emphasizing that it is "a narrow exception" and should be applied only when the following rationale prompting its development rings true: "where a reversal would appear inevitable, due to the clearly established position of the Court of Appeals to which an appeal would lie, our obligation as a national court does not require a futile and wasteful insistence on our view." Lardas v. Commissioner, 99 T.C. 490, 494-495 (1992).

Specifically, we have made clear that the Golsen rule does not apply where the precedent from the Court of Appeals contains

distinguishable facts or law.  See, e.g., <u>Metzger Trust v. Commissioner</u>, 76 T.C. 42, 72-74 (1981) (factual distinctions render <u>Golsen</u> rule not squarely on point), affd. 693 F.2d 459 (5th Cir. 1982); <u>Kueneman v. Commissioner</u>, 68 T.C. 609, 612 n.4 (1977) (distinct legal questions not governed by the <u>Golsen</u> rule), affd. 628 F.2d 1196 (9th Cir. 1980).

With respect to the matter before us, we conclude that <u>Catalano v. United States</u>, <u>supra</u>, is not squarely on point within the meaning of the <u>Golsen</u> rule.  From a factual standpoint, <u>Catalano v. United States</u>, <u>supra</u>, established a particular circumstance in which life insurance policies in Louisiana are deemed to be separate property.  Namely, this is true where one spouse is designated the owner or irrevocable beneficiary of a policy on the life of the other spouse.  See <u>id.</u> at 1061-1062. In contrast, the factual scenario we address involves one spouse being both the insured and the named owner.  Accordingly, respondent's reliance on the <u>Golsen</u> rule to dictate a particular outcome in this case is misplaced.

In addition, given that more than 30 years have passed since the decision in <u>Catalano v. United States</u>, <u>supra</u>, was issued, we believe that it is appropriate to consider not only the more generalized pronouncements made therein regarding Louisiana law but also any subsequent refinements that might be gleaned from courts of the State whose law it is our duty to apply.  In this

connection, we note that the decades ensuing since <u>Catalano</u> have seen State courts describe Louisiana law in a manner which seems to conflict with respondent's argument that community property principles govern ownership of neither a policy itself nor its proceeds.

For instance, we highlight two recent cases issued in the context of a partition upon divorce of a marital community. In <u>Biondo v. Biondo</u>, <u>supra</u> at p.9, 769 So. 2d at 102 (citations omitted), the court articulated the Louisiana rule as follows:

> While life insurance is generally considered sui generis under Louisiana law, it is the proceeds of the life insurance policy, not the policy itself, which are not subject to claims of the community. There is a clear distinction between the ownership of a policy of life insurance and the right to receive the proceeds of a life insurance policy after the death of the insured. The issue of the ownership of the life insurance proceeds is not before us today. The * * * policy was acquired during the marriage and the existence of the legal regime and is presumed to be community property.

Similarly, the court in <u>Kambur v. Kambur</u>, 94-775, p.6-7 (La. App. 5 Cir. 3/1/95), 652 So. 2d 99, 103, further explained:

> It is well settled in Louisiana that life insurance <u>proceeds</u>, if payable to a named beneficiary other than the estate of the insured, are not considered to be a part of the estate of the insured. The insurance <u>proceeds</u> do not come into existence during the life of the insured, never belong to him, and are passed by virtue of the contractual agreement between the insured and the insurer to the named beneficiary. Life insurance <u>proceeds</u> are not subject to the Civil Code Articles relating to donations inter vivos or mortis causa, nor are they subject to community claims or the laws regarding forced heirship. * * *

There is a clear distinction between the ownership of a policy of life insurance and the right to receive the proceeds of a life insurance policy after the death of the insured.  The issue of life insurance proceeds is not before us today.  The record reveals that the life insurance policies, annuities and IRAs in question were community property.  * * *  The assets in question were acquired during the existence of the legal regime and are presumed to be community property. * * *

See also, to like effect, Standard Life Ins. Co. v. Franks, 278 So. 2d 112, 114 (La. 1973); Allianz Life Ins. Co. v. Oates, 33-045, p.2-3 (La. App. 2 Cir. 4/5/00), 756 So. 2d 677, 679; Smith v. Smith, 95-0913, p.7 (La. App. 1 Cir. 12/20/96), 685 So. 2d 649, 653; Am. Health & Life Ins. Co. v. Binford, 511 So. 2d 1250, 1254 (La. Ct. App. 1987); Berry v. Metro. Life Ins. Co., 327 So. 2d 521, 523-524 (La. Ct. App. 1976).

Faced with these and analogous pronouncements, respondent's position is that "Louisiana courts have established different rules for cases involving the treatment of proceeds and community partition cases involving the treatment of premiums and/or cash surrender value of life insurance policies".  Respondent then summarizes these contrasting rules:

In community partition cases, there is a presumption that a policy purchased with community funds is community property.  To rebut that presumption, one spouse may prove that the other spouse donated funds to pay the premiums. * * *

In proceeds cases such as the present case, however, where the presumption of community does not apply, and the Louisiana courts have directed that the terms of the contract govern, the inquiry is whether decedent was the owner based upon the terms of the contract. * * *

Nevertheless, while not without initial appeal, the difficulty with the foregoing theory is that it neither adequately explains the Louisiana jurisprudence nor addresses the interplay of its premise with the test of section 20.2042-1(c)(1), Estate Tax Regs.

As regards State law, Louisiana courts have repeatedly stated that ownership of policies is governed by community property principles but ownership of proceeds is not. The explicit distinction has always been between the type of asset being considered (policy versus proceeds) and never between the type of case in which the question arises. In this connection, Berry v. Metro. Life Ins. Co., supra at 523-524, issued in the context of a dispute over death proceeds, is illustrative. The court in that case characterized the underlying policy as a community asset and the former wife as owner of a one-half interest therein. Id. At the same time, the court nonetheless reaffirmed the rule that death benefits are outside of the community regime and belong exclusively to the named beneficiary. Id. The former wife was thus held to have no claim to the proceeds payable by beneficiary designation to the decedent's sister. Id. at 522, 524.

Hence, although it is clear under Louisiana law that ownership of life insurance proceeds is governed solely by contract terms, such apparently does not prevent a spouse from

possessing a one-half community interest in the policy at the time of the insured's death.  Furthermore, it is only logical that State-level decisions considering policy ownership will typically arise in a context prior to death, such as a partition, while cases brought after death will focus on ownership of proceeds.  In each scenario, the litigants dispute, and the State court is concerned with deciding, only who is entitled to the asset, either policy or proceeds, which at that juncture represents economic value.

Against this backdrop, we emphasize that respondent's own regulatory test for inclusion under section 2042(2) turns on who possesses incidents of ownership in the <u>policy</u>, not in the <u>proceeds</u>.  See sec. 20.2042-1(c)(1), Estate Tax Regs.  In fact, the purpose of section 2042(2) is to include in a decedent's gross estate the value of life insurance proceeds when the right to monetary payment belongs to one other than the decedent or his estate.  Thus, the question we face here is not the one generally addressed by the Louisiana courts in the cases regarding ownership of proceeds after death.  Rather, our inquiry is who owned the <u>policies</u> at issue here under Louisiana law, a question upon which Louisiana courts have expounded primarily in a divorce setting.

Moreover, State jurisprudence offers no cogent basis from which to conclude that the rules used to ascertain policy

ownership prior to an insured's demise would cease to have any applicability were a court called upon make such a determination at death. The courts have stated that separate rules govern ownership of policies and proceeds, not that distinct bodies of law control policy ownership before versus at the time of death. Thus, in absence of any indication to the contrary, it seems reasonable to assume that Louisiana courts would apply a consistent set of rules for evaluating policy ownership, regardless of the procedural context. Since Louisiana caselaw employs general community property principles in this task, we cannot reject such standards in the matter before us.

We therefore conclude that the three policies of life insurance at issue here must be presumed to be community property under Louisiana law. As the record is devoid of facts sufficient to rebut such presumption, we hold that in accordance with section 20.2042-1(c)(1), (5), Estate Tax Regs., decedent possessed incidents of ownership in only one-half of the policies. Accordingly, only one-half of the proceeds therefrom is includable in his gross estate, and we need not reach the parties' alternative contentions regarding reimbursement.

To reflect the foregoing and to give effect to concessions,

Decision will be entered under Rule 155.